440 A.2d 609

**Betty Lou BRENNA**

v.

**NATIONWIDE INSURANCE CO., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1981.

Filed Jan. 22, 1982.

Petition for Allowance of Appeal Denied May 5, 1982.

Scott A. Fleischauer, Hollidaysburg, for appellant.

William B. Anstine, Jr., York, for appellee.

Before SPAETH, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant appeal arises from an order of the lower court directing the Defendant-Appellant Nationwide Insurance Co. to pay certain benefits pursuant to the Pennsylvania

No-fault Motor Vehicle Insurance Act. [Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 101 et seq., 40 P.S. § 1009.101 et seq., effective 12 months thereafter.] It is not disputed that the Appellee, Betty Lou Brenna, was covered by an insurance policy issued by the Appellant which was in force on October 20, 1977, the date of an accident in which the Appellee was injured.

This action was instituted by the Appellee to recover certain No-fault benefits which the Appellant refused to pay. The dispute arose after the Appellant paid for a substantial amount of medical care furnished to the Appellee, but then took the position that the Appellee was fully recovered from her injuries, and refused to make further payments. The lower court ordered the Appellant to pay the bills for the additional medical treatment experienced by the Appellee. On this appeal, the Appellant first contends that the evidence was not sufficient to support the Court's finding that it was liable to pay such bills as were accrued after May 1, 1978. Second, the Appellant argues that the lower court erred in ordering that it pay the Appellee's counsel fees incurred in the pursuit of No-fault benefits in this action. Last, the Appellant maintains that the Appellee was not entitled to collect transportation expenses under the No-fault Act for trips to her treating physician's office, and a hospital.

In our review on this case, we must be mindful that findings of a trial judge in a non-jury case must be accorded the same weight and effect on appeal as the verdict of a jury, and will not be reversed in the absence of an abuse of discretion or a finding of a lack of evidentiary support. *Firestone v. Luther Ford Sales, Inc.*, 271 Pa.Superior Ct. 480, 414 A.2d 355 (1979). The appellate court, in these circumstances, is limited to determinations of whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law. *Metz Contracting, Inc. v. Boxer Heights, Inc.*, 261 Pa.Superior Ct. 177, 395 A.2d 1373 (1978). It is also clear that in reviewing the findings of the trial judge, the victorious party is entitled to have the evidence viewed in the light most favorable

to him and all the evidence and proper inferences favorable to the successful party must be taken as true and all unfavorable inferences rejected. *Courts v. Campbell*, 245 Pa.Superior Ct. 326, 369 A.2d 425 (1976); *Colish v. Goldstein*, 196 Pa.Superior Ct. 188, 173 A.2d 749 (1961). This is especially true where the credibility of witnesses had to be weighed by the lower court. *Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172 (1977).

We first examine the issue of whether there was sufficient proof to support the finding of further medical payment liability against the Appellant after the date Appellant sought to terminate such benefits. The Appellant has taken the position that the Appellee should not have been entitled to benefits after May 1, 1978, because the Appellee allegedly failed to prove that she was "not disabled from resuming employment" after that date. It is apparent that the Appellant, in making that claim, relies upon a report, dated April 10, 1978, by one of the Appellee's treating physicians stating that he expected that the Appellee might be able to resume work on May 1, 1978.

■ We do not conclude that such circumstances provide any legally permissible basis for the Appellant's refusal to pay the Appellee's subsequent expenses for professional medical treatment and care. The Appellant certainly has no statutory support in the No-fault Act for its position. It appears to confuse its obligations under the No-fault Act with the concepts applicable in workers' compensation proceedings, where an injured employee's ability to return to work is of some arguable import in the determination of whether further payments from an employer's insurer may be due. However whether or not a motor vehicle injury victim can return to work after an injury is certainly not conclusive in establishing a date when the right to medical payment benefits may cease under the No-fault Act. At the time it stopped paying benefits, *no* physician had expressed the opinion that the Appellee had recovered from her injuries and no longer required medical care. In fact, the same physician who opined that Ms. Brenna might return to work on May 1, 1978 treated her for her injuries after that date.

 It would serve no useful purpose to recite here all of the medical treatment, including hospitalizations, experienced by the Appellee subsequent to May 1, 1978, for which the Appellant denied coverage. Suffice it to state that we have closely reviewed all of the evidence, including the testimony of several of the Appellee's treating physicians. Based upon that review, we find that there was abundant support in such evidence for the lower court's conclusion that the Appellee's medical difficulties related to her auto accident of October 20, 1977. Thus, we reject the Appellant's arguments that it should not have been ordered to pay for the medical costs accrued after May 1, 1978, and associated with such injuries.

 The Appellant next contends that the lower court erred in ordering that it pay the fees of Appellee's counsel which were incurred in this case. We cannot agree. As noted earlier, the Appellant refused to pay medical benefits on the totally irrelevant basis that it was predicted by one doctor that the Appellee would be able to return to work by the beginning of May, 1978. Of course, even if the Appellee had returned to work on that date, the Appellant would have still been responsible for the payment of subsequent medical costs relating to the treatment of injuries incurred in the earlier auto accident. We find that § 107(3) [40 P.S. § 1009.107(3)] is directly applicable in these circumstances and completely supports the lower court's order. That section provides:

> "If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended."

The lower court determined that the Appellant has no "reasonable foundation" for the denial of the Appellee's claims, and we can find no error in that conclusion. Indeed, in view of the rationale offered by the Appellant for its refusal to make payment, we believe that the denial of an order for the payment of counsel fees would have been

unjust in the circumstances presented here. Therefore, we reject the Appellant's second claim of error.

 Finally, we examine the Appellant's contention that the Appellee was not entitled, under the Act, to reimbursement for transportation expenses incurred in various trips to a doctor and a hospital. The lower court ordered that the Appellant pay one thousand four hundred ($1,400.00) dollars for the Appellee's transportation costs, at the rate of twenty cents ($.20) per mile, for seven thousand (7,000) miles of travel visiting a doctor and a hospital for treatment.[1] The Appellant does not contest the finding that the Appellee traveled seven thousand (7,000) miles for treatment, but does object to being found liable for any payment for the costs associated with such travel. It is contended by the Appellant that the No-fault Act does not allow for the payment of such travel expenses. Again, we must disagree with the Appellant.

The findings of the General Assembly which led to the passage of the No-fault Act are stated in § 102(a) [40 P.S. § 1009.102(a)]. Included therein at subparagraph (3), is the finding that: "The maximum feasible restoration of all individuals injured . . . in motor vehicle accidents on Commonwealth highways . . . is essential. . ." The purposes of the Act, set forth in subsection (b) of § 102, includes the statement that it was the policy of the General Assembly, in the enactment of the Act, to provide for ". . . prompt and adequate basic loss benefits for motor vehicle accident victims." In § 103 [40 P.S. § 1009.103], the term "Basic loss benefits" is defined to include benefits for the *net loss* sustained by a victim. While the Act, in § 103, sets forth certain exclusions from the definition of "Basic Loss benefits", transportation costs are not within such exclusions. Further, § 103 specifically describes what is meant by the phrase "medical and vocational rehabilitation services", a term describing benefits available to an injured victim. That definition states that services available include "medi-

1. This travel apparently included some ten trips from her home to Baltimore to visit one treating physician, and sixty trips to a hospital in Huntingdon, Pennsylvania for therapy.

cal care" and "physical and occupational therapy". Furthermore, and most significant in this case, the section specifically states that such "services" shall include "transportation where necessary to secure medical . . . rehabilitation services."

The Appellant seeks to create a fine technical distinction, arguing that even if the therapy visits to the hospital in Huntingdon could be viewed as travel for "rehabilitation" services, the visits to the Baltimore doctor could not. The record is devoid of evidence to suggest that the physician in Baltimore was not engaged in "rehabilitating" his patient, the Appellee, back to good health, within the broad meaning we must ascribe to that term.[2] We thus hold that the lower court acted correctly in ordering the payment by Appellant of the disputed transportation expenses. Therefore, we reject the Appellant's final claim of error.

The order of the lower court is hereby affirmed.

---

2. Websters New Collegiate Dictionary (1979 ed.) defines "rehabilitate" as: "to restore to a condition of health or useful and constructive activity".