525 A.2d 1234

**Timothy RALPH, Appellee,**

**v.**

**OHIO CASUALTY INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 21, 1986.

Filed March 23, 1987.

Reargument Denied May 12, 1987.

C. Richard Morton, West Chester, for appellant.

Robert M. Nissenbaum, Philadelphia, for appellee.

Before WIEAND, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

This is an appeal from the trial court's order awarding appellee, Timothy Ralph, work loss benefits in the amount of $1,860.58. Appellant, Ohio Casualty Insurance Co., argues that appellee has not met his burden of proving that: (1) the insurance policy issued by Ohio Casualty is the applicable security under the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act); [1] and (2) appellee is entitled to benefits under the No-fault Act and under the Ohio Casualty insurance policy. We find that there is a lack of evidentiary support for the trial court's finding that appellee proved that he was entitled to work loss benefits from the time he was released from the hospital to the date he returned to work, and consequently, we reverse the trial court's order.

On October 17, 1979, appellee, while a pedestrian, was struck and allegedly injured by a motor vehicle operated by Horace Paul, an insured of appellant Ohio Casualty. Three days later, on October 20, 1979, appellee was seriously injured when he was shot in the chest while in a bar. Appellee was consequently hospitalized from October 20, 1979 to December 19, 1979. On October 30, 1979, appellee submitted a claim for work loss benefits to Ohio Casualty

[1]. Act of July 19, 1974, P.L. 489, No. 176, Sec. 101, *et seq.,* 40 P.S. Sec. 1009.101, *et seq., repealed,* Act of February 12, 1984, P.L. 26, No. 11, Sec. 8(a), *effective* October 1, 1984. At the time of the motor vehicle accident in question, the insurance claims of appellee were governed by the now repealed No-fault Act.

for his motor vehicle-related injuries. Ohio Casualty denied the claim due to insufficient proof of the fact and the amount of the loss being claimed by appellee.

Appellee subsequently commenced an action against Ohio Casualty, seeking wage loss benefits, attorney fees, and interest pursuant to the No-fault Act.[2] The trial court awarded appellee work loss benefits in the amount of $1,860.58 *for the period from December 19, 1979, the date appellee was released from the hospital, to February 8, 1980, the date appellee returned to work.*[3] The trial court also awarded interest at the rate of 18% but denied appellee's claim for attorney fees. Both parties appealed without first filing exceptions with the trial court. This Court remanded the matter to the trial court to permit the parties to file exceptions *nunc pro tunc. See Ralph v. Ohio Cas. Ins. Co.,* 320 Pa.Super. 262, 467 A.2d 29 (1983). Exceptions were filed and denied, and Ohio Casualty filed a timely appeal to this Court.

**2.** Appellee commenced his claim for work loss benefits by petition and rule to show cause why benefits under the No-fault Act should not be paid. The trial court correctly acknowledged that in *Floczak v. Nationwide Mutual Ins. Co.,* 289 Pa.Super. 438, 433 A.2d 885 (1981), this Court held that an action for work loss benefits could not be commenced by petition and rule but had to proceed from the filing of a complaint or praecipe for summons. (*See* trial court opinion of May 17, 1982 at 5, n. 5). The trial court also properly relied on our holding in *Jones v. State Automobile Ins. Ass'n,* 309 Pa.Super. 477, 455 A.2d 710 (1983) (*en banc*), that the use of a petition and rule was a waivable defect. (*See* trial court opinion of May 17, 1982 at 5, n. 5). Since appellant in the instant case has failed to object, the defect has been waived. *See Ralph v. Ohio Cas. Ins. Co.,* 320 Pa.Super. 262, 467 A.2d 29 (1983).

**3.** Appellee claimed work loss benefits from the period of October 17, 1979 through February 8, 1980. The wage loss verification submitted by appellee's employer reflected appellee's absence from work beginning on October 25, 1979. Thus, there is no dispute that appellee was not entitled to work loss benefits from the date of the motor vehicle accident, Wednesday, October 17, 1979 to October 20, 1979, the date of the shooting. Additionally, we agree with the trial court that appellee was not entitled to work loss benefits for his inability to work from October 20, 1979, the date of the shooting, to December 19, 1980, the date he was discharged from the hospital, because appellee was hospitalized as the direct result of the gunshot wound he sustained to the chest. (Trial court opinion of April 23, 1986 at 2–3).

Appellant's first contention in this appeal is that Horace Paul's insurance with Ohio Casualty is not the applicable security under Section 204(a) of the No-fault Act, 40 P.S. Sec. 1009.204. This Section establishes a "hierarchy among potential sources of security" that may be responsible for payment of no-fault benefits to the injured party. *Tyler v. Ins. Co. of N.A.*, 311 Pa.Super. 25, 29, 457 A.2d 95, 97 (1983). Section 204(a) reads as follows:

**Sec. 1009.204. Source of basic restoration benefits**

(a) **Applicable security.**—The security for the payment of basic loss benefits applicable to an injury to:

(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and

(5) any other individual is the applicable assigned claims plan.

Pennsylvania No-fault Motor Vehicle Insurance Act, *supra,* at Sec. 204, 40 P.S. Sec. 1009.204. As this Court aptly stated in *Tyler:* "In determining the applicable source of basic loss benefits under Section 204's priority system, the

pertinence of each subsection must be considered seriatim—that is, the applicability of each preceding subsection must be excluded before the next may be considered." *Tyler*, 311 Pa.Super. at 30, 457 A.2d at 97.

Appellant does not dispute that subsection (1) is inapplicable in the instant case since appellee was not, at the time of the accident, an employee in a vehicle provided by his employer. Appellant, however, argues that subsection (2) is applicable because appellee falls within the statute's definition of "insured." [4]

The No-fault Act defines "insured" as:

**"Insured"** means:

(A) an individual identified by name as an insured in a contract of basic loss insurance complying with this act; and

(B) a spouse or other relative of a named insured, a minor in the custody of a named insured, and a minor in the custody of a relative of a named insured if—

(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and

(ii) in residence in the same household with a named insured.

An individual is in residence in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere.

**4.** Specifically, appellant argues in its brief that:
 ... there is not the slightest hint in any of the testimony presented at the deposition that the Plaintiff is not an insured. He never testified that he was not insured. He says he lives with his mother at times and his mother owns a motor vehicle. He never testified that his mother's vehicle was not insured. Under the standard provisions for a Pennsylvania No-Fault Insurance policy endorsement Plaintiff would be covered under his mother's policy, if there was one. Furthermore, there is no evidence whatever that the vehicle owned and operated by the Plaintiff himself was not insured.
 There is not a single item of testimony which recites that there is no such insurance, either on the Plaintiff diretly (sic) or through his mother's policy.
Brief for appellant at 19–20.

Pennsylvania No-fault Motor Vehicle Insurance Act, *supra*, at Sec. 103, 40 P.S. Sec. 1009.103. Appellant concedes that counsel for appellee submitted an "Affidavit of No Insurance" in which appellee swore that on the date of the motor vehicle accident, "I did not own a car, have No-Fault insurance or reside in a household where a relative carried No-Fault insurance." But appellant questions the reliability of this affidavit since appellee, at his deposition, admitted that he did own a car at the time of the October 17, 1979 accident, which he drove on the public highways within three days of the motor vehicle accident. At the deposition, appellee stated that the motor vehicle was licensed but he drove it "illegally" on the day he was shot. (Discovery deposition of Timothy Ralph at 6 and 25).

We have previously stated the standard to be applied by this Court when reviewing the findings of a trial judge in a non-jury case:

> ... findings of a trial judge in a non-jury case must be accorded the same weight and effect on appeal as the verdict of a jury, and will not be reversed in the absence of an abuse of discretion or a finding of a lack of evidentiary support. The appellate court, in these circumstances, is limited to determinations of whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law. It is also clear that in reviewing the findings of the trial judge, the victorious party is entitled to have the evidence viewed in the light most favorable to him and all the evidence and proper inferences favorable to the successful party must be taken as true and all unfavorable inferences rejected. This is especially true where the credibility of witnesses had to be weighed by the lower court.

*Brenna v. Nationwide Ins. Co.*, 294 Pa.Super. 564, 567–568, 440 A.2d 609, 611 (1982) (citations omitted). The trial court stated in its opinion that: "At the time of the said automobile accident, the Petitioner (appellee) was a pedestrian who neither carried an automobile liability insurance

policy nor resided with anyone who did carry such insurance." (Trial court opinion of May 17, 1982 at 2).

 ▮ Initially, we note that it is irrelevant whether appellee owned a motor vehicle at the time of the accident. If appellee did own a motor vehicle, the relevant inquiry would be whether appellee's motor vehicle was insured. Moreover, when viewing the evidence and proper inferences in the light most favorable to appellee, we find that the trial judge did not abuse his discretion [5] in finding that appellee did not have automobile liability insurance and did not reside with a relative who did have such insurance. The trial judge viewed as credibile appellee's statements that he stayed 75% of the time in a house that he rented, other times he spent at his mother's house when he was "lonely" and that on the day of the shooting, he was driving his car "illegally," i.e., without No-fault motor vehicle insurance. (*See* Discovery deposition of Timothy Ralph at 4, 25, and 51). Consequently, subsection (2) is inapplicable because appellee is not an "insured" within the meaning of the No-fault Act. Subsection (3) is also inapplicable since appellee was not "the driver or other occupant" of the motor vehicle but rather, appellee was merely a pedestrian.

We agree with the trial court that subsection (4) describes the applicable security in the instant case. Subsection (4) has been interpreted to include "any uninsured person who is not an occupant of a vehicle such as a pedestrian or a bystander who was injured by a motor vehicle." *Schimmelbusch v. Royal-Globe Ins. Co.*, 247 Pa.Super. 28, 32, 371 A.2d 1021, 1023 (1977). Appellee's status as an uninsured pedestrian places him within Subsection (4). Consequently, in the present case, the insurance policy Ohio Casualty issued to Horace Paul is the applicable security under the No-fault Act.

Appellant's second contention is that appellee has not met his burden of proving that he is entitled to work loss

---

**5.** An abuse of discretion occurs when "the record discloses that the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will." *M. London, Inc. v. Fedders Corp.*, 306 Pa.Super. 103, 107, 452 A.2d 236, 237 (1982).

benefits under the No-fault Act and under the Ohio Casualty insurance policy.[6] With respect to the No-fault Act, appellant argues that appellee failed to establish that he suffered any work loss as a result of the October 17, 1979 motor vehicle accident. The applicable section of the No-fault Act provides in part:

**Sec. 1009.106 Payment of claims for no-fault benefits**
 **(a) In general—**

. . . . .

 (2) No-fault benefits are overdue if not paid within thirty days after the receipt by the obligor of each submission of *reasonable proof of the fact and amount of loss sustained ...*

Pennsylvania No-fault Motor Vehicle Insurance Act, *supra,* at Sec. 106, 40 P.S. Sec. 1009.106 (emphasis added).

This appeal presents us with two problems of statutory construction regarding Section 106. First, we must determine who bears the burden of proving the fact and amount of work loss. Second, we must define what is "reasonable proof of the fact and amount of the loss sustained."

Preliminarily, we note that in construing any statute, we are guided by the Statutory Construction Act.[7] Our object in interpreting Section 106(a)(2) of the No-fault Act is "to ascertain and effectuate the intention of the General As-

---

**6.** Appellant argues that appellee is not entitled to work loss benefits under the Ohio Casualty insurance policy. We recognize that, in Pennsylvania, "(a)n insurance company is free, out of motives of altruism, generosity, or naked commercial advantage, to provide broader coverage than the No-Fault Act, and if it does so, the policy language controls." *See Rosin v. State Farm Mutual Auto. Ins. Co.,* 359 Pa.Super. 223, 229, 518 A.2d 861, 864 (1986) (quoting *Drake v. Donegal Mutual Ins. Co.,* 422 F.Supp. 272, 274 (W.D.Pa.1976)). Appellant's argument, however, must fail for two reasons. First, the record is devoid of a copy of Horace Paul's insurance policy with Ohio Casualty Insurance Co. Consequently, we cannot determine the extent of coverage under the insurance policy. Second, and more importantly, appellee submitted a claim for work loss benefits under the Pennsylvania No-fault Act and not under Horace Paul's insurance policy with Ohio Casualty Insurance Co. Thus, appellant's argument is superfluous.

**7.** Act of December 6, 1972, P.L. 1339, No. 290, 1 Pa.C.S. Sec. 1501 *et seq.*

sembly." Statutory Construction Act, 1 Pa.C.S.A. Sec. 1921(a). The provisions of the No-fault Act must be "liberally construed to effect their objects and to promote justice," but where the words of the No-fault Act are free from ambiguity, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act, 1 Pa.C.S.A. Sec. 1921(b), Sec. 1928(c). On the other hand, where the words of the No-fault Act are "not explicit, the intention of the General Assembly (must) be ascertained" by taking into consideration a number of factors.[8] Statutory Construction Act, 1 Pa.C.S.A. Sec. 1921(c).

In determining who bears the burden of establishing "reasonable proof of the fact and amount of loss" under Section 106(a)(2), we are guided by the purpose of the No-fault Act, namely, "to establish ... a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." Pennsylvania No-fault Motor Vehicle Insurance Act, *supra*, at Sec. 102(b), 40 P.S. Sec. 1009.102(b). We conclude that, although the No-fault Act fails to explicitly state who bears the burden of proof under Section 106(a)(2), the purpose of the No-fault Act could only be served by requiring the "victim," [9] or his "survivor," [10] or the representative

**8.** Among some of the factors the court should consider in ascertaining the intent of the General Assembly are:
 (1) The occasion and necessity for the statute.
 (2) The circumstances under which it was enacted.
 (3) The mischief to be remedied.
 (4) The object to be attained.
 (5) The former law, if any, including other statutes upon the same or similar subjects.
 (6) The consequences of a particular interpretation.
 (7) The contemporaneous legislative history.
 (8) Legislative and administrative interpretations of such statute.
Statutory Construction Act, 1 Pa.C.S.A. Sec. 1921(c)(1)–(8).

**9.** Section 103 of the No-fault Act describes "victim" as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle ..." Pennsylvania No-fault Motor Vehicle Insurance Act, *supra*, at Sec. 103, 40 P.S. Sec. 1009.103.

**10.** Section 103 of the No-fault Act describes "survivor" as "(A) spouse; or (B) child, parent, brother, sister or relative dependent upon the

of either, to establish "reasonable proof." Under the No-fault Act, only motor vheicle accident victims and the survivors of deceased victims are to be accorded basic loss benefits from motor vehicle accidents. We find that our legislature would not have intended to create a situation where someone other than the victim or his survivor would bear the burden of proof in order for the victim or his survivor to be entitled to receive no-fault benefits. Additionally, the Insurance Department Regulations [11] provide in part:

> As soon as practicable the *eligible person, survivor* or the representative of either shall give the Company written proof of claim, under oath if required, fully describing the nature and extent of *bodily injury*, treatment and rehabilitation received and contemplated and other information to assist the Company in determining the amount due and payable.

31 Pa.Code Sec. 66.102 Condition C (emphasis in original). This statement is consistent with our conclusion that the burden falls on the victim or his survivor.

We are also cognizant that if we are to err in ascertaining the intent of the legislature in close or doubtful cases, we should err in favor of coverage for the insured. *See Crawford v. Allstate Insurance Co.,* 305 Pa.Super. 167, 451 A.2d 474 (1982). We, however, do not find this to be either a close or doubtful case. It seems reasonable to assert that our legislature was thinking of the victim or his survivor when it stated that "reasonable proof of the fact and amount of loss" has to be submitted to the "obligor." [12] Either the victim or his survivor would be in the best position, or perhaps would be the only person capable, of submitting such proof. We find, therefore, that the victim

deceased for support." Pennsylvania No-fault Motor Vehicle Insurance Act, *supra,* at Sec. 103, 40 P.S. Sec. 1009.103.

**11.** 31 Pa.Code Sec. 66.1, *et seq.*

**12.** Section 103 of the No-fault Act describes "obligor" as "an insurer, self-insurer, or obligated government providing no-fault benefits in accordance with this act." Pennsylvania No-fault Motor Vehicle Insurance Act, *supra,* at Sec. 103, 40 P.S. Sec. 1009.103.

or his survivor has the responsibility of proving the fact and amount of the losses he claims are the result of a motor vehicle accident.

We must next attempt to give some meaning to the phrase "reasonable proof of the fact and amount of the loss sustained." Neither the No-fault Act nor the regulations define this phrase. In regard to this question, a major treatise on the Pennsylvania No-fault, published by the Pennsylvania Trial Lawyers Association, states:

> Items ordinarily used to prove economic loss or "special damages" in personal injury cases should suffice as "reasonable proof of the fact and amount of loss sustained" for the purpose of obtaining no-fault benefits. Counsel for no-fault claimants should submit, for example, medical reports and bills to prove medical expenses, income tax returns and a statement from the employer to prove work loss, and bills and receipts to prove survivor's loss, replacement services loss, or funeral expenses.

D. Shrager, ed., *The Pennsylvania No-fault Motor Vehicle Insurance Act*, Sec. 1:22 (1979). While such documents are necessary, the mere fact that they were submitted does not alone establish "reasonable proof of the fact and amount of the loss." The court must make a case-by-case determination of whether there is "reasonable proof" based on the particular facts of each case.

In the case *sub judice*, the trial court found that "Plaintiff (appellee) did establish a basis for payment of his wage loss after he was discharged from the hospital." [13] (Trial court opinion of April 23, 1986 at 5). As we previously stated, when reviewing the findings of a trial judge in a

---

13. In its May 17, 1982 opinion, the trial court stated:
 Accordingly, it is the view of this Court that the proof submitted is reasonable only insofar as it pertains to wage losses for the period commencing on December 19, 1979 to February 8, 1980, which represents the date he was discharged from the hospital as recovered from his gun shot wounds, but was still unable to work as a consequence of injuries suffered in the automobile accident with Respondent's insured.
 Hence, we do allow work loss benefits for said period.
 (Trial court opinion of May 17, 1982 at 3).

non-jury case, this Court will only reverse the findings of the trial court where the trial court abused its discretion or there is a lack of evidentiary support. *See Brenna, supra.* While recognizing that our scope of review is limited, we have difficulty accepting the trial court's finding that appellee proved his entitlement to work loss benefits under the No-fault Act for the period from December 19, 1979, the date appellee was released from the hospital, to February 8, 1980, the date appellee returned to work.

Following the October 17, 1979 motor vehicle accident, appellee was able to make two trips in a motor vehicle; and on the day of the shooting, was able to drive himself to and from Chester, a thirty-six mile round trip, in order to get a haircut. (Discovery deposition of Timothy Ralph at 24–25, 41, and 45). After appellee returned from Chester, he entered a bar and was subsequently shot there. Additionally, the motor vehicle accident of October 17th occurred while appellee, a pedestrian, was crossing the street. Appellee was struck by the eighty-year-old driver of a Volkswagon who was attempting to back into a parking space along the roadside. (Discovery deposition of Timothy Ralph at 30). Regarding appellee's hospital stay as the result of the gunshot wound, appellee testified that he told the doctors about the motor vehicle accident, but they did not treat him for any injuries sustained as a result of the motor vehicle accident. (Discovery deposition of Timothy Ralph at 43).

Appellee further testified that everyday he suffers from pain in his leg, arm, neck, back, and right shoulder and that he also suffers from headaches and dizziness. (Discovery deposition of Timothy Ralph at 49). Appellee asserted that these injuries prevented him from driving a vehicle since the night of the shooting, with one exception, when he did drive his car. (Discovery deposition of Timothy Ralph at 49–50). Thus, appellee was unable to return to work where he was employed as a truck driver. Appellant paid appellee's medical bills resulting from the motor vehicle accident but appellant refused to pay work loss benefits because

appellee did not submit sufficient proof of the fact and amount of work loss.

 We agree with appellant's refusal to pay work loss benefits to appellee under the No-fault Act. The connection between the injuries appellee sustained and the motor vehicle accident is tenuous at best. We do not believe that the legislative purpose of the No-fault Act would be furthered by extending liability to the facts of this case. The No-fault Act was designed to compensate victims for motor vehicle-caused injuries. After careful review of the record, we conclude that there is no evidentiary support for the trial court's finding that appellee's injuries were the result of the October 17th motor vehicle accident. Appellee was hospitalized from October 20, 1979 to December 19, 1979, nearly two months, as a result of a gunshot wound to the chest. Appellee failed to prove that his inability to return to work until February 8, 1980 was due to the motor vehicle accident and was not the result of the gunshot wound to the chest. Consequently, we conclude that appellee failed to submit to appellant reasonable proof of the fact of the loss.[14]

Order of the trial court reversed.

WIEAND, J., concurs in the result.

**14.** We also find that appellee failed to submit to appellant reasonable proof of the *amount* of the loss. In its opinion of May 17, 1982, the trial court stated: "Although the record and proof submitted *appears ambiguous* regarding the wages earned by Petitioner (appellee), the wage verification form submitted by Peititoner does set forth a basis for establishing his income at $358.58 per week for the purpose of calculating his work loss benefits ..." (Trial court opinion of May 17, 1982 at 3) (emphasis added).

On appeal to this Court, we remanded the matter to the trial court stating: "(T)he reasoning of the trial court is elusive and the proof, as the trial court described it, was 'ambiguous.' In this case, more than in most, it is important that the trial court have an opportunity to address the errors alleged on appeal." *Ralph v. Ohio Cas. Ins. Co.,* 320 Pa.Super. at 265, 467 A.2d at 30. On remand, the trial court's reasoning was no less elusive since the court merely concluded, without explanation, that "the Plaintiff did establish a basis for payment of his wage loss after he was discharged from the hospital." (Trial court opinion of April 23, 1986 at 5). Additionally, the trial court failed to clarify the ambiguity that existed concerning the wages earned by appellee. Instead, the trial court focused on the twenty percent tax

Note 14—Continued

deduction pursuant to Section 206(b) of the No-fault Act. After discussing Section 206(b), the trial court explained that it calculated the award as follows:

| | |
|---|---|
| 9 days @ $57.37 (12/19/79 to 12/31/79)= | $ 516.35 |
| Statutory monthly maximum (1/1/80 to 1/31/80)= | 1,000.00 |
| 6 days @ $57.37 (2/1/80 to 2/8/80)= | 344.23 |
| Total | $1,860.58 |

We find that proof of appellee's wages remains ambiguous. The trial court based the amount of the award on the wage and salary verification form that appellee's attorney submitted to appellant and which was signed by an employee of Nu-Car Carriers. This form, however, fails to answer the questions concerning salary per hour, per week, and per month. The question, "Wage or Salary as of Date of Accident," was answered as: "1–5–79 to 11–2–79, $20,156.20." Additionally, the question concerning the number of hours worked was answered as: "varies." The question regarding the number of days worked was answered as "varies" and "by mile."

Contributing to the confusion regarding the amount of wages earned by appellee, is the statement of earnings which appellee submitted to appellant. This statement, signed by appellee, stated his earnings for the thirteen-week period from July 21, 1979 to October 17, 1979 as follows:

| | |
|---|---|
| 7/21 | $ 353.71 |
| 7/28 | $ 869.68 |
| 8/ 4 | $ 0.00 |
| 8/11 | $ 536.45 |
| 8/18 | $ 0.00 |
| 8/25 | $ 0.00 |
| 9/ 1 | $ 0.00 |
| 9/ 8 | $ 0.00 |
| 9/15 | $ 342.20 |
| 9/22 | $ 617:61 |
| 9/29 | $ 474.49 |
| 10/ 6 | $ 565.13 |
| 10/13 | $ 289.15 |
| Total | $4048.42 |

At his deposition, appellee explained that he had no earnings for a few weeks because he was being tested for diabetes and was subsequently given some time off from work since he was diagnosed as not getting enough rest because he was working too many hours. (Discovery deposition of Timothy Ralph at 15 and 18). Also, appellee was not at work on the day of the motor vehicle accident, October 17, 1979, a Wednesday. Appellee explained that he was not working that day because he "had the day off." (Discovery deposition of Timothy Ralph at 19).

Consequently, we conclude that there is a lack of evidentiary support for the trial court's finding that appellee proved wage losses in

the amount of $1,860.58. *See Brenna,* 294 Pa.Super. 564, 440 A.2d 609 (1982).