**Annette VIOLA and Jeffrey Viola, Appellants,**

v.

**Dr. Jack BOCHER, M.D. and Chester County Orthopedic Associates, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 30, 1999.
Filed Oct. 25, 1999.

Daniel L. Thistle, Philadelphia, for appellants.

Vincent G. Guest, Blue Bell, for appellees.

Before POPOVICH, JOYCE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellants, Annette and Jeffrey Viola, appeal from the April 13, 1999 Order dismissing their petition to enforce settlement.[1]

¶ 2 Appellant/wife had spinal fusion surgery performed by Dr. Jack Bocher on June 24, 1992 to alleviate her severe back pain. On July 10, 1992, appellant/wife, while attempting to stand up from a lower position, heard a pop and felt immediate pain in her hip area. She contacted Dr. Bocher with her complaints and he treated her for a pulled groin. She continued to have pain, subsequently sought a second opinion and was diagnosed with a fracture of the pelvis. Appellants assert Dr. Bocher was negligent in failing to properly diagnose and/or treat her injury.[2] Dr. Bocher denied any negligence and a jury trial commenced on June 29, 1998. Prior to trial no offer of settlement was made.

¶ 3 On July 1, 1998, appellees' counsel informed appellants' counsel that Dr. Bocher had given consent to settle the case for $200,000 less possible "set-offs".[3] There were no further discussions concerning settlement until July 2, 1998 when appellees' counsel informed appellants' counsel that the CAT Fund decided to offer $250,000 on top of the PIGA offer to settle the case. The exact amount of a possible set-off was still unknown. After the completion of jury instructions, appellants' counsel requested appellees' counsel to contact PIGA about an exact set-off amount. Appellants also asked appellees' counsel to see if PIGA would be interested in a "high/low" arrangement.[4] Appellees' counsel contacted PIGA but the representative with whom he spoke did not have authority to either enter a high/low agreement or to tell him whether or not PIGA would be seeking a set-off for the disability payment. Appellees' counsel was to call back at 11:45 a.m. to reinquire as to PIGA's position concerning both issues.

¶ 4 Appellants subsequently decided to accept the settlement offer of $450,000 regardless of the set-off sought by PIGA.

---

1. Ordinarily, an Order denying enforcement of a settlement agreement has been held to be interlocutory and not appealable. *Knisel v. Oaks*, 435 Pa.Super. 169, 645 A.2d 253 (1994). The underlying action was resolved in favor of the defendants and therefore the trial court's denial of the petition herein does dispose of all of the claims of the parties and is thus appealable as a final Order.

2. Appellants also averred Dr. Bocher was the Chief Executive Officer of Chester County Orthopedic Associates, Inc., and was acting within the course and scope of his agency during his treatment of appellant/wife. Appellant/husband's claim was limited to loss of consortium.

3. Dr. Bocher's primary limits under his policy with Pennsylvania Property and Casualty Insurance Guaranty Association (PIGA) was tendered to the Pennsylvania Catastrophe Loss (CAT) Fund. It was agreed that PIGA would be entitled to a set-off for insured medical bills; however, it was not known whether PIGA would also request a set-off for disability insurance that had been paid for by appellant/wife.

4. Under this proposal, appellants would have been paid $150,000 from PIGA if the appellees won the case, but if the appellants won, the claim would be limited to the total amount of insurance available regardless of the verdict.

While appellants' counsel was informing the judge of their intent to settle, a court officer approached and announced the jury had reached a verdict after deliberating for less than one-half hour. Appellants' counsel went in search of appellees' counsel in an attempt to communicate their acceptance of the settlement offer. Upon meeting, appellees' counsel informed appellants' counsel that the offer was withdrawn. This conversation occurred at approximately 11:30 a.m., fifteen minutes prior to the time when appellees' counsel had stated he would attempt to recontact PIGA. When court was reconvened, appellants' counsel informed the court that a settlement had been reached (N.T., 7/2/98, at 3–4). Defense counsel responded by stating that the offer had been withdrawn prior to acceptance. *Id.* The jury was brought in and a defense verdict was announced.[5]

¶ 5 Appellants filed a motion for post-trial relief wherein they sought to have the purported settlement enforced.[6] The trial court denied their motion and thereafter denied their petition for reconsideration. Appellants then filed a separate petition to enforce settlement. The trial court denied the aforesaid petition by Order dated April 13, 1999. This appeal followed.

■ ¶ 6 Appellants first argue the trial court erred by determining there was no settlement to enforce. The trial court concluded that appellees' offer to settle was never validly accepted and noted that a subjective decision to accept is of no legal consequence until the acceptance is communicated. (Trial Court Order, 4/13/99, n. 1.) The trial court also found the purported offer could be withdrawn until accepted. (Trial Court Opinion, 5/21/99, at 1.)

■ ¶ 7 While appellants contend they accepted the offer before it was withdrawn, the court found equally credible the explanation that upon counsels' meeting, appellees' counsel spoke first and withdrew the offer before it was accepted.[7] We conclude the trial court did not err by concluding that the offer was withdrawn before it was accepted. The intent to contract is a question of fact for the trier of fact. *Bethlehem Steel Corporation v. Litton Industries, Inc.*, 321 Pa.Super. 357, 468 A.2d 748 (1983), *affirmed*, 507 Pa. 88, 488 A.2d 581 (1985). In reviewing the findings, the victorious party is entitled to have the evidence viewed in the light most favorable to him and all the evidence and proper inferences favorable to the successful party must be taken as true and all unfavorable inferences rejected. *Id.* 468 A.2d at 752, *citing Brenna v. Nationwide Insurance Co.*, 294 Pa.Super. 564, 440 A.2d 609, 611 (1982). Accordingly, there was no settlement to enforce.

■ ¶ 8 Appellants also argue the offer could not have been withdrawn by the appellees prior to the verdict being announced. Appellants contend that by permitting the appellees to withdraw the offer, they were deprived a reasonable period of time to consider whether or not to accept the same. Appellants assert that had they been aware there was any time limitation on the offer, a request would have been made to give them sufficient opportunity to evaluate the merits thereof. In essence, appellants maintain that where an offer is made at the start

---

5. The jury answered the first of four special interrogatories as follows:
   Does the jury find that the defendant, Jack Bocher, was negligent?
   Yes _____     No __X__

6. Appellants also sought a new trial on the basis that the trial court erred by sustaining the appellees' objection concerning the scope of appellants' expert report, i.e. Dr. John Esterhai was precluded from testifying whether Dr. Bocher was negligent with respect to his

management of a phone call on July 10, 1992 when appellant/wife complained of the onset of severe new pain in the groin area while stooping to pick up her cat.

7. Even appellants' statement of the case indicates the offer of settlement was withdrawn "[a]t about the exact time [plaintiffs' counsel] informed [defense counsel] of the acceptance." (Appellants' Brief at 7–8.)

of jury deliberations, it is reasonable to assume the offer will stay open until the verdict is actually announced in court. We disagree. Appellants have failed to cite nor are we aware of any authority which supports such a proposition. Appellees were free to withdraw the offer at any time prior to the jury announcing its verdict.

¶ 9 Accordingly, the trial court did not err by denying appellants' petition to enforce settlement.[8]

¶ 10 Order affirmed.

8. Despite the appellees' assertion to the contrary, appellants' inquiry into the possibility of a high/low arrangement did not constitute a counter-offer terminating their original offer. The offer remained open until the time it specifically was withdrawn by appellees, as appellants were still waiting for the defendant/appellees to respond to the set-off question.