Sustrik et al., Appellants, *v.* Jones & Laughlin Steel Corporation.

48

Argued November 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, ERVIN, and WATKINS, JJ. (WRIGHT and WOODSIDE, JJ., absent).

*Gaylord W. Greenlee,* with him *McCune and Greenlee,* for appellants.

*H. Gilmore Schmidt,* with him *Schmidt & Allison,* for appellee.

OPINION BY HIRT, J., March 18, 1959:

The plaintiffs, Mike Sustrik and wife, are the owners by entireties, of coal bearing property in West Pike Run Township, Washington County. Their land adjoins similar property of Jones & Laughlin Steel Corporation on which the company had conducted a mining operation. The subsurface boundary line between the two properties however had not been located on the vein of coal. In this action of trespass (quare clausum fregit for the taking of coal, brought under §6 of the Act of April 20, 1846, P. L. 411, 12 PS §1442) the evidence was that the defendant by careless mining procedures had removed 1768 tons of coal from the land of the plaintiffs; on the other hand the testimony also indicated that plaintiffs had mined 803 tons of coal from the defendant's land. During the course of the trial, negotiations for the settlement of the controversy were carried on between the parties to the action, and their counsel. The discussion principally dealt with the value of the coal removed. The difference in tonnage, in plaintiffs' favor, of the coal negligently mined, by each of the parties on the other's land, was 965 tons. The plaintiffs were represented at the trial by Palmer J. McCloskey, Esquire, of the Washington County Bar. He, under a settlement agreement with defendant's counsel, accepted the defendant's check for $750 in full

of the plaintiffs' claim, and on June 18, 1957 marked the case settled and discontinued of record in the prothonotary's office. When he, however, attempted to deliver the check to the plaintiffs, accompanied by a release to be signed by them, they refused to accept the check and they would not execute the release. The plaintiffs then discharged Palmer J. McCloskey as their attorney and retained new counsel, upon whose advice they presented their present petition to reopen and vacate the settlement on the ground that their counsel had acted without authority in discontinuing the case of record. On June 5, 1958 after hearing, the prayer of the petition was refused by the court en banc. Defendant's check or draft in the sum of $750 is still in the hands of plaintiffs' present counsel.

The general rule is that an attorney engaged to press a claim or prosecute an action at law has no implied power by virtue of his general retainer to settle, by compromise, his client's claim or cause of action; (5 Am. Jur., Attorneys at Law, §98) ; ordinarily, prior specific authority or subsequent ratification is necessary to make such compromise valid and binding on his client. 66 A.L.R. 107, and supplemental annotation in 30 A.L.R. 2d 944. Of course the act of an agent or attorney affecting the relation of his principal or client, with a third person, done in accordance with his principal's *manifestations of consent although without special authority,* may bind his principal or client. Restatement, Agency, §8, 27, 49. In §159 of the Restatement, Agency, it is said in comment b: "A person not authorized to do so but purporting to make a contract on behalf of a principal subjects him to liability to the same extent as if the contract were authorized if, under the circumstances, the principal may fairly be charged with responsibility for the third person's misapprehension as to the agent's authority."

The factual background as stated by Judge WEINER speaking for the court en banc may be taken as the findings upon which the plaintiffs' petition was refused. In the course of the trial when it appeared that counsel were talking settlement, the trial judge invited them to his chambers. The discussion there dealt principally with the value of the coal which had been removed. In the discussion, the defendant's representative stated that he was prepared to prove that the value of the coal in place was 50 cents a ton. And appellants' brief in effect admits the fairness of "(50c) a ton as compensation for all coal wrongfully extracted by the defendant from the plaintiffs' property." After some discussion the defendant agreed to pay $750 in full settlement of the claim which amount would pay plaintiffs, not 50 cents, but about 77 cents per ton for the 965 tons of coal for which they were entitled to recover. Plaintiffs' counsel then left the judge's chambers to discuss the matter with his clients and he was observed in consultation with them outside the courtroom. When he returned he reported that the plaintiffs had agreed to accept $750 if the defendant would lease to them, for the purpose of strip-mining, a designated part of its property in the same area. Defendant's counsel then stated that in general it was against the policy of Jones & Laughlin to lease any of its property, but he offered to use his best offices to secure the desired lease for the plaintiffs "should the policy of his client permit it." Thereupon plaintiffs' counsel again talked with his clients and was seen while in consultation with them. The lower court found: "Upon his return he stated that his clients would be willing to settle the case for the amount agreed upon, provided the attorney for the defendant would agree to use his best offices to recommend to his client that should they be willing to lease any of their coal lands for stripping

purposes, particularly the parcel desired by the plaintiffs, the plaintiffs would be given the first right to such a lease, to which condition counsel for the defendant agreed, and both counsel and the Court considered the case settled on that basis." In that connection the judge's opinion recites: "The settlement of the case was then made on this basis, the jury discharged, and the record marked settled and discontinued by the attorney for the plaintiffs. It is admitted that the attorney for the defendant did recommend [to Jones & Laughlin Steel Corporation] the lease desired and that a draft for the $750 agreed upon was duly forwarded to the attorney for the plaintiffs."

Although plaintiffs knew on the second day of the trial that their case had been settled they did not file the present petition until seven months after the action had been "marked settled and discontinued" on the record. But while the general rule is that a principal must promptly repudiate his agent's unauthorized acts (*Baumgartner v. Whinney,* 156 Pa. Superior Ct. 167, 39 A. 2d 738; *Yarnall v. Yorkshire Worsted Mills,* 370 Pa. 93, 87 A. 2d 192) we rest our affirmance of the lower court's order not on that ground, but upon the circumstances surrounding the settlement in controversy. Plaintiffs' claim against defendant, and defendant's counterclaim both were concerned solely with questions of money damages. The alleged failure of plaintiffs' attorney to obtain a stripping lease for plaintiffs was wholly collateral to the issue then being tried and normally would not be included in a settlement of an action for damages based upon the value of unmined coal in place. And if the trial had proceeded to its conclusion the obtaining of a lease could not have been reflected in any verdict. The lower court was justified in concluding that the plaintiffs' conduct in connection with settlement and discontinuance clearly

clothed their counsel with authority to settle the case upon principles of apparent authority akin to those above referred to. Moreover, under the admitted facts, manifesting the consent of the plaintiffs to the settlement, the court did not err in refusing to take testimony on their petition.

Order affirmed.