

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-1999

# Farris v. JC Penney Co Inc

Precedential or Non-Precedential:

Docket 98-1419

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation
"Farris v. JC Penney Co Inc" (1999). *1999 Decisions*. Paper 132.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/132

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 17, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1419

MARGARET FARRIS; CHARLES FARRIS, H/W,

     Appellants

v.

JC PENNEY COMPANY, INC.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-cv-07432)
District Judge: Honorable Anita B. Brody

Argued
March 9, 1999

Before: MANSMANN, SCIRICA and NYGAARD,
Circuit Judges.

(Filed May 17, 1999)

       Richard P. Abraham, Esquire
        (ARGUED)
       Abraham, Bauer & Spalding
       1600 Market Street
       32nd Floor
       Philadelphia, PA 19103

        COUNSEL FOR APPELLANT

William C. Foster, Esquire
  (ARGUED)
Kelly, McLaughlin & Foster
260 South Broad Street
1700 Atlantic Building
Philadelphia, PA 19102

   COUNSEL FOR APPELLEE

OPINION OF THE COURT

MANSMANN, Circuit Judge.

Margaret and Charles Farris appeal from an order of the District Court denying their motion, made pursuant to Fed. R. Civ. P. 60(b), to set aside a settlement reached in and the resulting dismissal of a diversity action filed in the U.S. District Court for the Eastern District of Pennsylvania.

This appeal requires us to predict whether, in the particular circumstances presented here, the Pennsylvania Supreme Court would invoke the doctrine of apparent authority to enforce a settlement entered into by an attorney lacking actual authority to settle the case. We addressed a similar, although not identical, issue in Tiernan v. Devoe, 923 F.2d 1024 (3d Cir. 1991). We revisit this area of the law in order to clarify our view of the doctrine of apparent authority with respect to matters of settlement in Pennsylvania. Because we predict that the Pennsylvania Supreme Court would not apply the doctrine to enforce the settlement in this case, we will reverse the order of the District Court and remand this matter for further proceedings.

I.

The facts underlying this appeal are straightforward and uncontested. We recount these facts in detail because the events leading up to the contested settlement and those immediately following the court's "acceptance" of the settlement are crucial to the legal issues involved.

2

On April 15, 1995, Margaret Farris was injured in a fall at the J.C. Penney store in downtown Philadelphia. She alleges that her injuries were sustained when she was restrained by Penney's employees and falsely accused of shoplifting. Farris and her husband Charles hired attorney Timothy Booker to represent them in connection with the incident, agreeing to pay him a 40% contingent fee. Booker filed suit on behalf of the Farrises on November 28, 1995, in federal court.

A trial, bifurcated with respect to liability and damages, began before the judge and jury on September 24, 1996. At about noon on the second day of trial, settlement discussions began.[1] Booker and the Farrises met with the trial judge alone. The judge then met with attorney Renee Berger, counsel for J.C. Penney. Later that day, in a meeting with both Booker and Berger, the judge asked Berger if J.C. Penney would authorize her to settle the case for $20,000. After receiving assurance from the judge that $20,000 would indeed settle the matter, Berger secured the necessary authority and communicated that fact to Booker. Ms. Berger then saw Booker enter a witness room with Mrs. Farris where the two remained for about five minutes. At some later point Booker informed Berger that the $20,000 settlement offer had been accepted. In fact, neither of the Farrises authorized Booker to accept the offer. To the contrary, Margaret Farris had told Booker that she did not want the case to be settled until her medical treatment was complete.

Nonetheless, the $20,000 settlement figure was communicated to the judge. When court reconvened in the afternoon of September 25, the record establishes the following exchange:

> The Court:  Good afternoon. What can I do for you?
>
> Ms. Berger: Your Honor, we have resolved this matter for $20,000.

_____

1. The District Court found that as of the time of these discussions, Booker had not taken steps to secure expert testimony bearing on damages.

3

```
The Court:   Do you want to get anything on the
             record?

Ms. Berger:  Yes. I would like to just get it on the
             record that we have agreed to settle this
             matter for $20,000.

The Court    Defendant will pay $20,000?

Ms. Berger:  Will pay $20,000 to Plaintiff. The
             Plaintiffs will be responsible for all
             medical bills and Plaintiffs' costs and
             Defendant will be --

The Court:   Total settlement of $20,000?

Ms. Berger:  That is correct.

The Court:   Is that correct Mr. Booker?

Mr. Booker:  Yes.

The Court:   I notice the plaintiffs are present in
             court.
```

The jury was summoned, received the thanks of the court, and was discharged. The entire in-court proceeding with respect to the settlement lasted approximately three minutes and the District Court later found that Mrs. Farris either did not hear or did not understand what was happening until after the jury had been dismissed.

Following discharge of the jury, the Farrises left the courtroom with Booker. Crying, Margaret Farris asked Booker, "Why did you do this to me?" Mrs. Farris testified that Booker's response was, "One day you'll thank me." Within minutes of this exchange, Margaret Farris re-entered the courtroom where Ms. Berger stood conferring with a number of the jurors. Mrs. Farris told Ms. Berger that she had never authorized Booker to settle the case. Berger confirmed Margaret Farris's account.

On September 26, 1996, the trial judge entered an order dismissing the case pursuant to Fed. R. Civ. P. 41.1(b). Berger prepared a general release setting forth the terms of the settlement and transmitted it to Booker. Because the Farrises declined to sign the release, the settlement check was never issued. Booker sought to have the settlement

4

proceeds disbursed without a signed release but Berger refused. On October 7, 1996, Booker filed a motion to enforce the settlement. In November of 1996, Booker was discharged as attorney for the Farrises.

Richard P. Abraham, Esq., replaced Booker as counsel for the Farrises. On January 13, 1997, a hearing was held on the motion to enforce the settlement. The trial judge recused himself and the matter was reassigned. On January 24, 1997, while the motion to enforce settlement was pending, Abraham filed a motion pursuant to Rule 60(b) for relief from dismissal. At an evidentiary hearing on February 5, 1998, the District Court heard testimony from Booker, Berger and the Farrises. On April 15, 1998, the Court issued a Memorandum and Order denying the Farrises' Rule 60(b) motion and upholding the settlement. The District Court based its decision on the doctrine of apparent authority, holding that Pennsylvania law recognized the doctrine and that the Pennsylvania Supreme Court would find that the circumstances of this case warranted its application. This timely appeal followed.

II.

The Pennsylvania Supreme Court has never invoked the doctrine of apparent authority to enforce a settlement entered into by an attorney who lacks actual authority to settle a matter. At best, the court has left the applicability of the doctrine open, seeming to suggest in Rothman v. Fillette, 469 A.2d 543 (Pa. 1983), that apparent authority might be used to enforce a settlement given the right set of facts. In Rothman, the plaintiffs filed suit to recover damages for injuries sustained in an automobile accident. Following negotiations with the Rothmans' insurer, the Rothmans' attorney received a check for $7,000. The facts showed that the Rothmans' attorney, acting without his clients' knowledge or consent, forged the Rothman signature on the settlement agreement and the check and misappropriated the settlement proceeds. On instructions of the Rothmans' attorney, the pending personal injury action was marked settled and discontinued.

Some five years later, the Rothmans filed a petition to remove the order discontinuing the case. The trial court

5

granted the petition and reinstated the action. Reversing, the Pennsylvania Supreme Court wrote:

> At the outset it must be understood that under the facts of this case there is no question of an implied or an apparent agency. The law in this jurisdiction is quite clear that an attorney must have express authority to settle a cause of action of the client.[2]

469 A.2d 545.

The only direct endorsement of apparent authority in Pennsylvania is set forth in an intermediate appellate court decision, Sustrik v. Jones & Laughlin Steel Corp., 149 A.2d 498 (Pa. Super. 1959). There, the Sustriks' attorney negotiated a settlement agreement with the defendants, accepted a check in full settlement, and dismissed the Sustriks' claim. When the settlement check and accompanying release were delivered to the Sustriks, however, they refused to accept either, alleging that their attorney lacked authority to settle the matter. The Sustriks' request to reopen and to vacate the settlement was denied. Affirming the denial, the Superior Court stated the general rule that:

> [T]he act of an agent or attorney affecting the relation of his principal or client, with a third person, done in accordance with his principal's manifestations of consent although without special authority, may bind his principal or client.

149 A.2d at 499. The court found that the Sustriks had manifested their consent to the settlement:

> The lower court was justified in concluding that the plaintiffs' conduct in connection with settlement and discontinuance clearly clothed their counsel with

---

2. Other Pennsylvania Supreme Court cases reiterate the need for express authority. See Starling v. West Erie Ave. Bldg. & Loan Assn., 3 A.2d 387 (Pa. 1939) (noting that Pennsylvania has never utilized "apparent authority" as grounds to enforce settlement entered into by attorney without express authority); Yarnall v. Yorkshire Worsted Mills, 87 A.2d 192 (Pa. 1952); and Senyshyn v. Karlak, 299 A.2d 294 (Pa. 1973) (stating that attorney cannot settle litigation without express authority).

authority to settle the case upon principles of apparent authority. . . .

Id. at 500.

III.

We considered the Rothman and Sustrik decisions in our opinion interpreting the doctrine of apparent authority under Pennsylvania law in Tiernan v. Devoe, 923 F.2d at 1024. Tiernan involved a challenge to an order of the District Court granting summary enforcement of several settlement agreements. Our decision turned on "the nature and extent of the authority that plaintiffs gave their attorney and on his conduct towards the district court and other parties to the litigation." Id. at 1028. We proceeded on the assumption that the plaintiffs' attorney lacked actual authority to enter into a settlement agreement on behalf of his clients. We explored, therefore, whether Pennsylvania law recognized an alternative source of authority upon which the defendants could rely to enforce the settlement.

Looking first to the Pennsylvania Supreme Court's statements in Rothman, we concluded that the Court's reasoning "suggest[ed] that [it] was reluctant to rule out completely the availability of [implied or apparent] authority in Pennsylvania." 923 F.3d at 1034. The apparent reservation of the doctrine in Rothman combined with the endorsement of the doctrine by the intermediate appellate court in Sustrick, convinced us to write in the Tiernan opinion: "[W]e believe that the Pennsylvania Supreme Court might allow implied actual or apparent authority to suffice in an appropriate case.". 923 F.3d at 1035.3

In the matter now before us, the District Court, in the context of the Farrises' motion, concluded that this is the appropriate case:

_____

3. We balanced this conclusion with an acknowledgment that:

> [T]his area is clouded somewhat by the fact that the Pennsylvania Supreme Court has on occasion stated without qualification that "[a]n attorney cannot, absent express authority, settle litigation."

Id. at 1034.

7

> I read [Tiernan] to permit enforcement of a settlement where apparent authority is present. [J.C. Penney] reasonably interpreted the Farrises' actions on September 21, 1996 -- specifically, seeing the Farrises and Booker enter Judge Fullam's chambers, seeing Booker enter the witness room with his clients after the $20,000 offer was communicated, and seeing the Farrises at the counsel table as the settlement was read into the record, to mean that they [the Farrises] had given authorization to Booker to settle their case for $20,000. These manifestations by the Farrises to defendant's counsel cloaked Booker with apparent authority sufficient to uphold the settlement. Whether or not Booker exceeded his authority as the Farrises attorney (and the credible evidence makes plain that he did), the record contains both words and actions by both Booker and the Farrises sufficient to support defendant's reasonable conclusion that a settlement had been reached.

2 F. Supp.2d at 700. According to the District Court, J.C. Penney is "entitled to finality with regard to an agreement it reasonably entered into over eighteen months ago; the Farrises may pursue their dissatisfaction with their attorney in another forum." Id.

We are convinced that the District Court's reliance on Tiernan in predicting that the Supreme Court of Pennsylvania would here recognize an exception to the general rule requiring that an attorney have actual authority to settle was misplaced. Ultimately, our discussion in Tiernan of Pennsylvania law with respect to apparent authority was in dicta:

> [W]e believe that the Pennsylvania Supreme Court might allow . . . apparent authority to suffice. We do not believe, however, that [this] ground is so clearly available in this case to justify summary enforcement of the settlement agreements. Furthermore, we emphasize the general rule that an attorney cannot settle his client's case without express actual authority.

Id. at 1035.

8

The District Court extrapolated from the dicta in Tiernan and predicted that the Pennsylvania Supreme Court would invoke the doctrine of apparent authority to enforce the settlement at issue in this case. While we reiterate our conclusion in Tiernan that the Supreme Court of Pennsylvania may recognize apparent authority in some case, it has yet to do so and we are not convinced that the Supreme Court would invoke the doctrine on the facts of this case.

IV.

Our discussions of apparent authority in the context of Pennsylvania law and the law generally have emphasized that whether the doctrine applies depends upon the client's conduct. In Tiernan, we explained that:

> Apparent authority . . . has as its source the client's conduct toward another party in the litigation. It arises from a principal's manifestations to a third party that any agent has authority to act on the principal's behalf. See Restatement (Second) of Agency S 8 (1958).

923 F.2d at 1034.

We again stressed the fact-dependent nature of the doctrine of apparent authority in Edwards v. Born, Inc., 792 F.2d 387 (3d Cir. 1986). In Edwards, the plaintiffs appealed a District Court order enforcing a settlement agreement entered into by the Edwardses' attorney. The Edwardses contended that their attorney lacked actual authority to settle the case. Because Virgin Islands law was devoid of statute or precedent governing the issue of an attorney's authority to settle a client's action, we looked to principles of agency law and "common law rules `as generally understood and applied in the United States' " in accordance with V.I. Code Ann. Tit. 1, S 4. Id. at 389-90. Applying those principles in evaluating the Edwardses' claims, we noted first that:

> A strong public policy exists in favor of settlements. Such a settlement, once entered, may be set aside only if the client produces "proof that the attorney had no right to consent to its entry."

Id. at 389 (quoting Surety Insurance Co. of California v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984). We then considered the applicability of apparent authority, writing that "there is no consensus" on the doctrine but finding that its applicability represents "the better rule":

> [E]nforcing settlement agreements on the basis of apparent authority is consistent with the principles of agency law, the policies favoring settlements generally, and the notions of fairness to the parties in the adjudicatory process.

Id. at 390. In finding that apparent authority could be invoked to validate a settlement we emphasized that the "crucial question in ascertaining whether apparent authority has been created is whether the principal has made representations concerning the agent's authority to the third party." Id. Evaluating the facts in Edwards, we concluded that

> Apparent authority is an equitable doctrine that places the loss on one whose manifestations to another have misled the latter. We agree with the [Edwardses] that the record is devoid of communications directly from the [Edwardses] to defense counsel, much less representations that might have led defense counsel to believe that Groner had the Edwardses' permission to settle.

Id. at 391.

In Edwards, we thus declined to rely on apparent authority even though: 1) the attorney in question had been the Edwardses' attorney since the beginning of the case and had transmitted all communications from the defendants to the Edwardses; (2) pretrial conference orders required the attorneys to appear with authority to settle; and (3) the attorney had been authorized to select medical experts to prepare for the trial.

The Tiernan and Edwards decisions, taken together, establish that in order for the doctrine of apparent authority to apply, the facts must show that the plaintiffs (principals) communicated directly with defense counsel, making representations that would lead defense counsel to

10

believe that the plaintiffs' attorney had authority to settle the case. The District Court in the matter now before us grounded its invocation of apparent authority on two findings: (1) the Farrises were seen conferring with their attorney during the course of settlement negations; and (2) the Farrises were silent during the in-court announcement of the settlement and dismissal of their cases.

The Farrises in-court conduct is the linchpin of this case. Normally in-court silence during the reading or entry of a settlement would be a powerful indicator that the particular settlement terms were authorized. The unique facts of this case, however, negate the evidentiary force of the Farrises' silence.

The District Court, making findings of fact, noted that the entire in-court proceeding from discussion of the settlement through dismissal of the jury lasted less than three minutes. The Court also found that Mrs. Farris either did not understand or did not hear what was happening during those three minutes. Moreover, had J.C. Penney construed Farrises' silence as a manifestation of authority, it was immediately disabused of that notion. As soon as the proceedings were concluded, Mrs. Farris expressed her surprise with and opposition to the settlement both to her own attorney and to counsel for J.C. Penney.[4] J.C. Penney was on notice immediately that the settlement was not authorized and has never paid any amount to anyone as a result of the settlement.[5]

Where, as here, the District Court found that Booker was never authorized to settle on behalf of his client, there is a credible explanation for the client's silence, and the client

_____

4. Had there been any manifestation of authority sufficient to support the doctrine of apparent authority, that manifestation was promptly repudiated. The general rule is that a principal may promptly repudiate an agent's acts, apparent authority notwithstanding. See Tiernan, 923 F.2d at 1037; Sustrik, 149 A.2d at 501.

5. While we recognize that J.C. Penney suffered at least some degree of prejudice as a result of events surrounding the purported settlement, we note that counsel, at oral argument, conceded that he is not aware of any impediment which would prevent his client from proceeding to trial in this matter.

11

made all parties aware of the lack of authority immediately upon learning what had happened, we are convinced that these equities lie with the Farrises and that the Supreme Court of Pennsylvania would not rely on the doctrine of apparent authority to enforce the settlement. This conclusion is consistent with our own caselaw and the law of Pennsylvania.

The particular facts supporting our conclusion are unlikely to arise often. This is not the "typical" case where a client has acted to create an ambiguity with respect to the attorney's authority, where she has delayed in asserting the lack of authority, or where it is clear that the real motive for challenging a settlement involves a change of heart regarding the substance of the settlement.[6]

V.

In predicting how a matter would be decided under state law we take into consideration the District Court's analysis and also examine:

> (1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting the state law; (4) decisions from other jurisdictions that have discussed the issues we face here.

_____

6. For decisions resting on these more "typical" grounds, see Jones v. Stedman, 595 So.2d 1355 (Ala. 1992) (ordering enforcement of settlement where challenger sat silently while settlement was read into the record and later argued that by her silence she conveyed disagreement with the settlement); Moreland v. Suttmiller, 397 S.E.2d 910 (W. Va. 1990)(ordering settlement enforced where record showed that petitioners vacillated between granting and revoking attorney's authority to settle and real reservations seemed to relate to belief that they had settled for inadequate amount); Sunn v. Mercury Marine, 305 S.E.2d 6 (Ga. 1983)(enforcing settlement where client was silent when settlement was read and failed to object to settlement or to attorney's continued appearance on his behalf); Szymkowski v. Szymkowski, 432 N.E.2d 1209 (Ill. App. 1982)(enforcing settlement where petitioners were present and failed to object in a meeting where their counsel informed opposing counsel that the terms of settlement were accepted).

12

Wiley v. State Farm Fire & Casualty Co., 995 F.2d 457, 459
(3d Cir. 1993).

Taking all of these authorities into account, we predict
that while the Pennsylvania Supreme Court might, in some
as yet undefined case, apply the doctrine of apparent
authority to uphold a disputed settlement, it would not do
so here. Accordingly, we will reverse the order of the
District Court denying the motion to set aside the
settlement entered and will remand this matter for further
proceedings.

NYGAARD, J., Concurring.

I concur in the judgment. I believe, however, that it is neither necessary nor desirable that we predict whether the Pennsylvania Supreme Court would recognize apparent authority in this odd situation, because as the majority opinion makes clear, Farris learned of the settlement agreement within minutes and immediately repudiated it. Under these facts, I view this as a contemporaneous repudiation of whatever agreement her attorney reached with counsel for the defendant.

Alternatively, I would suggest that we certify the apparent authority issue to the Pennsylvania Supreme Court for it to decide. In Hakimoglu v. Trump Taj Mahal Assoc., 70 F.3d 291, 304 (3rd Cir. 1995), we said that an issue should be certified to the state court "when: (1) the issue is one of importance; (2) it may be determinative of the litigation; and, (3) state law does not provide controlling precedent through which the federal court could resolve the issue." I think this case qualifies. In any event, I would avoid making the prediction.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

14