**Gerald R. and Eleanor W. BENNETT, Husband and Wife, Appellees**

v.

**Charles R. and Yolanda JUZELENOS, Husband and Wife, Appellants.**

Superior Court of Pennsylvania.

Submitted Sept. 24, 2001.

Filed Jan. 30, 2002.

John A. Wolfe, Gettysburg, for appellants.

Harold A. Eastman, Gettysburg, for appellees.

Before: DEL SOLE, President Judge, JOHNSON, J. and CERCONE, President Judge Emeritus.

DEL SOLE, President Judge.

¶ 1 This appeal is from the order of the Court of Common Pleas of Adams County entered on February 28, 2001, which granted Appellees Gerald and Eleanor Bennett's petition to enforce a settlement agreement. The Bennetts initiated this equity action seeking reformation of the parties' deeds. Prior to trial, the Bennetts asked the court to enforce the parties' settlement agreement regarding the boundary line between their respective lands and reformation of their deeds.

Upon review, we reverse the decision of the Chancellor.

¶ 2 Herein, Appellants Charles and Yolanda Juzelenos contend the Chancellor erred in determining that a settlement agreement was reached and, assuming such an agreement existed, that it was not in violation of the Statute of Frauds.

¶ 3 Before reaching the merits of Appellants' issues, we must address the Bennetts' claim that the issues were not preserved for appellate review. This appeal follows a hearing on the pre-trial petition of the Bennetts to enforce a settlement agreement which they believe was reached with Appellants. Following conclusion of the hearing, the Chancellor entered a final order, finding the settlement agreement was enforceable and directing the parties to effectuate it. Appellants did not file any post-trial motions following entry of the court's order. In the case of a nonjury trial, an appellant ordinarily must file post-trial motions pursuant to Pa. R.C.P. 227.1(c)(2), in order to preserve issues for appellate review. *See Lane Enterprises v. L.B. Foster Co.*, 551 Pa. 306, 710 A.2d 54 (1998) (if an issue has not been raised in a post-trial motion as required by Pa.R.C.P. 227.1, it is waived for appellate purposes); *but see Chalkey v. Roush*, 757 A.2d 972, 976 (Pa.Super.2000) (*en banc*), *appeal granted*, NO. 487 W.D.AL-LOC.2000, —— Pa. ——, 785 A.2d 86 (Feb 22, 2001) (under certain exceptional circumstances, such as when an equity court enters a final order rather than a *decree nisi* to which exceptions may be filed, an appellant does not waive issues by failing to file post-trial motions).

¶ 4 Nevertheless, Appellants have not waived their claims for appellate review. Although the parties and the Chancellor appear to treat this matter as an appeal following an equity trial, such is clearly not the case. The merits of the Bennetts' underlying action to reform the parties' deeds and Appellants' counterclaim in trespass were never addressed. Rather, only the petition to enforce the settlement was addressed at the hearing and in the court's order and opinion.

¶ 5 The Note to Pa.R.C.P. 227.1(c)(2) provides in pertinent part: "A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a trial." (citing *U.S. National Bank in Johnstown v. Johnson*, 506 Pa. 622, 487 A.2d 809 (1985)). Further, "a motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice." Pa.R.C.P. 227.1(c)(2), Note; *Porreco v. Maleno Developers, Inc.*, 761 A.2d 629, 632 (Pa. Cmwlth.2000).

¶ 6 Our Supreme Court held in *Coco Brothers, Inc. v. Board of Public Education of the School District of Pittsburgh*, 530 Pa. 309, 608 A.2d 1035 (1992), that post-trial motions were not required, or even permissible, from a trial court's order disposing of a petition to enforce a judgment. The Supreme Court held that the proceedings to enforce a judgment were clearly within the type of procedures described in the Note to Rule 227.1(c)(2). Similarly, we held in *Kramer v. Schaeffer*, 751 A.2d 241 (Pa.Super.2000), that no post-trial motions were required from a trial court's decision on a motion to enforce a settlement. Although the trial court conducted a lengthy evidentiary hearing in *Kramer*, we concluded that the proceedings were not the type from which post-trial motions are required. *Kramer*, 751 A.2d at 244. Finally, in a case of nearly identical procedural posture to that before us, our Commonwealth Court held that an appeal shall not be "quashed" for failure to

file post-trial motions from an order enforcing a settlement agreement. *Porreco,* 761 A.2d at 632. Accordingly, we find that Appellants have not waived any of their claims for failing to file post-trial motions in accordance with Pa.R.C.P. 227.1, because such motions are not permitted from an order granting a petition to enforce a settlement agreement.

¶ 7 We now turn to the merits of this appeal. When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court. *Kramer,* 751 A.2d at 241 (citing *Yaros v. Trustees of the University of Pennsylvania,* 742 A.2d 1118 (Pa.Super.1999)). However, we are only bound by the trial court's findings of fact which are supported by competent evidence. *Kramer,* 751 A.2d at 247; *Yaros,* 742 A.2d at 1124. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position. *Yaros,* 742 A.2d at 1124. Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous. *Id.*

¶ 8 The record reveals the following factual and procedural history of the case. Appellants and the Bennetts are owners of adjoining tracts of land which at one time were part of a larger tract of land. A survey of the land conducted in 1997 conflicted with the 1972 survey upon which the parties' original deeds were based. At primary issue is a boundary line between two of the parties' tracts. Based upon the 1997 survey, the Bennetts filed a complaint in equity seeking reformation of the three deeds in accordance with the new survey.[1] Appellants answered the complaint and averred that the course and distance for the center line of the boundary road was correct at the time of the 1972 survey, but that the Bennetts altered the location of a road causing the discrepancy with the 1997 survey. Appellants also counterclaimed for trespass.

¶ 9 Prior to trial, the parties engaged in extensive settlement negotiations. In their pre-trial statement, the Bennetts indicated that they believed the parties had reached a settlement whereby Appellants would agree to reformation of the deeds in accordance with the new survey in exchange for $6,000.00. The Bennetts then asked the Chancellor to enforce the settlement.

¶ 10 Before trial on the merits began, the Chancellor held a hearing on whether a settlement had been reached. Appellants denied that they had reached a settlement.[2] While acknowledging that her prior counsel, Attorney Lynn Peterson, had engaged in settlement negotiations with the Bennetts, Appellant Yolanda Juzelenos testified that she "wasn't happy" with negotiating, she had never authorized him to negotiate a settlement and she never expressly agreed to a settlement of this dispute. N.T., 1/30/01, at 41–51.

¶ 11 To the contrary, Attorney Peterson testified that Appellants had reluctantly authorized him to engage in settlement negotiations. *Id.,* at 8, 22–23, 61. However, he acknowledged that neither Appel-

---

1. The Bennetts also own a smaller tract of adjoining property slightly affected by the new survey. However, specific discussion of that deed is not necessary to our resolution of this case.

2. Due to health problems, Appellant Charles Juzelenos was not able to testify regarding any substantive issues in this matter. Appellant Yolanda Juzelenos testified on behalf of herself and her husband.

lant expressly authorized him to settle the case for $6,000.00. *Id.*, at 63. Rather, Attorney Peterson believed he had authority to settle because Charles Juzelenos, Jr., Appellants' son, told him during a telephone conversation to settle the case as proposed. *Id.*, at 27–28, 63. Attorney Peterson believed the son was authorized by Appellants to instruct him to settle. *Id.*, at 28, 63. Attorney Peterson based this assumption on the fact that the son had regularly attended meetings regarding this matter with his mother. *Id.*, at 61, 63. However, Appellant Yolanda Juzelenos testified she had never authorized her son to settle this case on his parents' behalf. *Id.*, at 47, 54. Notably, Attorney Peterson never testified that Appellants had told him that their son had been authorized to act on their behalf in this matter nor had he previously done so. Also, Attorney Peterson never testified that the son expressly told him that his parents authorized the settlement. Charles Juzelenos, Jr. never testified in this case.[3]

¶ 12 Based upon the son's representations, Attorney Peterson entered into a settlement agreement with the Bennetts' counsel the precise terms of which would be subsequently reduced to writing. The Bennetts' counsel then prepared a written settlement agreement. However, Appellants refused to execute the agreement. Attorney Peterson was eventually dismissed by Appellants prior to the filing of an answer and counterclaim.

¶ 13 Following the hearing, the Chancellor determined that Appellants' son had apparent authority to settle this matter on their behalf. N.T., at 65. In other words, the Chancellor concluded that "[Attorney] Peterson could act upon the strength of the son's representation". *Id.*, at 66.[4] The Chancellor then advised counsel to brief the Statute of Frauds issue concerning whether the settlement agreement entered into by Attorney Peterson was enforceable despite his lack of written authority to do so. Subsequently, the Chancellor concluded that the Statute of Frauds did not bar the settlement of this case, and he ordered enforcement of the agreement. This appeal followed.

¶ 14 We turn now to Appellants' assertion that Attorney Peterson lacked authority to settle this case. Appellants argue that "[t]he record is absent of any evidence which would show that [their] son had any authority in this action to bind [them] to the agreement nor is there any evidence that [their] former counsel ... had any reason to believe that such authority existed." Appellant's Brief, at 5. Regarding the validity of a settlement agreement, we recently stated in *Pulcinello v. Consolidated Rail Corp.*, 784 A.2d 122, 124 (Pa.Super.2001) (citations omitted):

> The enforceability of settlement agreements is ordinarily determined by general principles of contract law. An oral settlement agreement may be enforceable and legally binding without a writing. This Court has stated that "Where parties have reached an oral agreement, the fact that they intend to reduce the agreement to writing does not prevent enforcement of the oral agreement."

---

3. We note that the record indicates that Charles Juzelenos, Jr., may have had an interest in quick settlement of this matter unrelated to the interests of his parents. Mrs. Juzelenos testified: "My son was anxious to build a house there. My son has 15 acres of land there and he was anxious to build a house

and they have held that up. He can't build until this has been settled." N.T., at 47.

4. The Chancellor based this finding of fact in part upon Appellants' failure to produce Charles Juzelenos, Jr. at the hearing to dispute Attorney Peterson's testimony.

■ Settlement agreements which have not been reduced to writing are ordinarily enforceable. However, before an attorney may agree to a settlement, he must have actual authority to settle from his clients. *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d .543, 545 (1983). The ordinary employment of an attorney to represent a client with respect to litigation does not confer upon the attorney the implied or apparent authority to bind the client to a settlement or compromise, and the attorney cannot do so in the absence of express authority. *Starling v. West Erie Avenue Building & Loan*, 333 Pa. 124, 3 A.2d 387 (1939); *Lodowski v. O'Malley*, 227 Pa.Super. 568, 307 A.2d 439, 440 (1973); *Garnet v. D'Alonzo*, 55 Pa.Cmwlth. 263, 422 A.2d 1241, 1242 (1980).

¶ 15 Presently, there is no dispute that Attorney Peterson did not have express authority to settle this case simply because his services had been retained relative to this litigation. Rather, the question that we must address is whether Charles Juzelenos, Jr. had the authority to advise Attorney Peterson to settle this matter on behalf of his parents. If he did, then Attorney Peterson had authority to enter into the settlement agreement on behalf of Appellants.

■ ¶ 16 Accordingly, the first issue turns on the application of the doctrine of apparent authority. In *Tiernan v. Devoe*, 923 F.2d 1024, 1034 (3d Cir.1991), the Third Circuit set forth the doctrine of apparent authority as follows:

> Apparent authority ... has as its source the client's conduct toward another party in the litigation. It arises from a principal's manifestations to a third party that an agent has authority to act on

the principal's behalf. See Restatement (Second) of Agency § 8 (1958).

¶ 17 As noted by the Court of Appeals for the Third Circuit, our Supreme Court has yet to adopt the doctrine of apparent authority **in the context of an attorney's settlement of a suit**. *Farris v. J.C. Penney Company, Inc.*, 176 F.3d 706, 711 (3d Cir.1999); *Tiernan*, 923 F.2d 1024.[5] In *Farris*, 176 F.3d at 709, the Third Circuit noted: "At best, [the Pennsylvania Supreme Court] has left the applicability of the doctrine open, seeming to suggest in *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (Pa.1983), that apparent authority might be used to enforce a settlement given the right set of facts."

¶ 18 This Court has previously applied the doctrine of apparent authority to a settlement situation. *Sustrik v. Jones & Laughlin Steel Corp.*, 189 Pa.Super. 47, 149 A.2d 498 (1959) (plaintiffs' conduct in connection with settlement and discontinuance clearly clothed their counsel with authority to settle the case upon principles of apparent authority). We similarly will apply it here.

■ ¶ 19 However, despite the application of the doctrine, we nevertheless conclude that under the particular facts of this case, its application does not warrant enforcement of the settlement agreement. The application of apparent authority is fact-dependent. *Farris*, 176 F.3d at 706, 711, (citing *Edwards v. Born Inc.*, 792 F.2d 387 (3d Cir.1986)); *Sustrik* 149 A.2d at 501 (given the circumstances surrounding settlement, application of the principles of apparent authority was proper).

¶ 20 We are convinced the record does not support the conclusion that Attorney Peterson reasonably believed that Charles

---

5. Our Supreme Court has employed the doctrine of apparent authority in other contexts. *See, e.g., Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407 (1968) (third party lacked apparent authority to bind defendant to contract).

Juzelenos, Jr. had apparent authority to settle this matter on his parent's behalf. As our Supreme Court stated in *Revere Press, Inc. v. Blumberg,* 431 Pa. 370, 246 A.2d 407, 410 (1968) (citation omitted):

> Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power.

*See also, Stallo v. Insurance Placement Facility of Pennsylvania,* 359 Pa.Super. 157, 518 A.2d 827, 830 (1986) (collecting cases).

¶ 21 Herein, the record reveals that Appellants were at best reluctant to settle, and Attorney Peterson was well aware of this fact. Mrs. Juzelenos testified that she never authorized her son to settle this matter, that she never told Attorney Peterson her son had authority to act on her and her husband's behalf and that she never agreed to the settlement of the case for $6,000.00. Attorney Peterson acknowledged that neither of his clients actually accepted the settlement as proposed. Attorney Peterson assumed that Mrs. Juzelenos had authorized her son to settle the matter because of his involvement with the case, i.e., attending meetings with his mother. Further, there was no testimony from Charles Juzelenos, Jr. to show that Attorney Peterson's belief in the son's apparent authority was reasonable.

¶ 22 The sum of the evidence is inadequate to support a conclusion that Charles Juzelenos, Jr. had the apparent authority to settle this matter on his parents' behalf. There is no evidence of record to suggest that Appellants, by either their words or deeds, granted their son (or Attorney Peterson) the authority to settle their case. Nor is there any evidence to suggest that Appellants led Attorney Peterson to believe that their son had such authority. In light of Mrs. Juzelenos' clear aversion to settlement and the absence of any facts that would permit the conclusion that Charles Juzelenos, Jr. had authority to sanction a settlement, the Chancellor erred in concluding Attorney Peterson had authority to enter into a settlement agreement. Under these circumstances, without Appellants' express grant of authority to settle, there could be no settlement.

¶ 23 Because we find that no settlement agreement was reached, we need not address the question of whether the Statute of Frauds barred settlement of this matter by Attorney Peterson without written authorization.

¶ 24 Order reversed. Case remanded for trial. Jurisdiction relinquished.