Hydrojet Services, Inc.        :
                                    :   No. 1272 C.D. 2018
           v.                 :
                                    :   Argued: September 10, 2019
Reading Area Water Authority,     :
                Appellant     :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE McCULLOUGH                           FILED: November 14, 2019

The Reading Area Water Authority (RAWA) appeals from the April 27, 2018 order of the Court of Common Pleas of Berks County (trial court) granting in part the petition of Hydrojet Services, Inc. (Hydrojet), seeking to enforce a settlement agreement reached with RAWA over unpaid water usage charges for a period of approximately eight years.[1]

## Facts and Procedural History

The underlying facts of this case are not in dispute. In early 2009, Hydrojet began its business operations in a building located at 450 Gateway Drive, Reading, Pennsylvania (the property). For unknown reasons, Hydrojet first began receiving water bills for the property in May 2017. At that time, RAWA sent

---

[1] RAWA also attempts to appeal from the May 23, 2018 order of the trial court denying its motion for reconsideration; however, such orders are not appealable. *See In re Merrick's Estate*, 247 A.2d 786, 787 (Pa. 1968).

Hydrojet an invoice for its current water usage, without mention of any outstanding or unpaid charges. However, on November 2, 2017, Hydrojet received an invoice from RAWA detailing outstanding charges of $242,043.14, representing charges for its water and sewer usage from 2009 until May 2017. On November 21, 2017, RAWA posted a shut-off notice at the property for nonpayment of the outstanding charges. This shut-off notice advised that water service would be discontinued by December 6, 2017, unless the outstanding charges were paid in full. (Petition for Enforcement of Settlement Agreement ¶¶3-13; Reproduced Record (R.R.) at 3a-4a.)

Following a meeting of the respective parties on December 5, 2017, the parties agreed to settle the outstanding charges and for these charges to be paid in installments over time. On December 18, 2017, counsel for RAWA forwarded a draft settlement agreement to Hydrojet's counsel, who later advised counsel for RAWA that the agreement was acceptable. On December 27, 2017, counsel for RAWA forwarded a final version of the settlement agreement to counsel for Hydrojet for execution. Michael Rado, Hydrojet's President, signed the settlement agreement but struck out a paragraph stating the agreement was executed voluntarily and without any duress or undue influence. On January 24, 2018, RAWA posted a second shut-off notice at the property, with a service discontinuance date of February 8, 2018. Two days later, Hydrojet paid its January invoice and also made a lump sum payment in accordance with the terms of the settlement agreement. RAWA cashed the check from Hydrojet on January 29, 2018. (Petition for Enforcement of Settlement Agreement ¶¶14-22; R.R. at 4a-6a.)

On January 30, 2018, counsel for Hydrojet contacted counsel for RAWA to confirm that RAWA had accepted the settlement agreement and would abide by the terms therein. However, counsel for RAWA advised that the settlement

2

agreement was not accepted. That same day, counsel for Hydrojet forwarded an executed settlement agreement to counsel for RAWA that included the paragraph that was previously stricken by Rado. Approximately one week later, counsel for RAWA advised counsel for Hydrojet that RAWA declined to enter into a settlement agreement and that service would be discontinued the following day as set forth in the second shut-off notice. (Petition for Enforcement of Settlement Agreement ¶¶23-26; R.R. at 6a.)

On February 8, 2018, the scheduled service disconnection date, Hydrojet filed the present petition for enforcement of the settlement agreement, along with a request for injunctive relief seeking to enjoin RAWA from discontinuing water service to the property. That same day, the trial court issued an order granting Hydrojet's request for injunctive relief and enjoining RAWA from discontinuing water service to the property.[2] On February 13, 2018, RAWA filed an answer to the petition denying the existence of any enforceable settlement agreement. Rather, RAWA described the settlement agreement provided to counsel for Hydrojet as an offer and the returned agreement executed by Hydrojet with paragraph 13 stricken as a counteroffer which RAWA never accepted. (R.R. at 3a-29a.)

That same day, the trial court heard argument with respect to Hydrojet's petition. At this argument, counsel for RAWA introduced a motion requesting the presiding judge to recuse herself from the proceedings based upon the fact that the judge had previously represented a landlord in a lease transaction involving Hydrojet. However, after discussions between the judge and counsel for Hydrojet, counsel for RAWA stated that he no longer had any concerns regarding the recusal issue.

---

[2] In this order, the trial court also directed Hydrojet to post a bond in the amount of $100.00.

Returning to the issue of the settlement agreement, counsel for RAWA noted that the parties met on December 5, 2017, at which time verbal understandings were reached, subject to the same being memorialized in writing. Counsel for RAWA stated that he sent a draft settlement agreement to counsel for Hydrojet, who approved the same, after which he sent a clean copy for execution.[3] After a nearly month-long period of inactivity, counsel for RAWA indicated RAWA sent the second shut-off notice to Hydrojet. Immediately thereafter, counsel for RAWA received the executed settlement agreement with paragraph 13 crossed out, after which he notified counsel for Hydrojet that the deal was off. On January 30, 2018, counsel for RAWA noted that he received an executed settlement agreement with paragraph 13 intact. Prior to the conclusion of the hearing, the trial court announced its ruling that the settlement agreement was enforceable. (R.R. at 30a-48a.)

On March 21, 2018, RAWA filed a motion for reconsideration, reiterating its allegation that no valid enforceable settlement agreement existed between the parties and noting that the presiding judge had denied its request for recusal. Additionally, RAWA noted that the trial court had not entered a formal order granting Hydrojet's petition for enforcement. By order dated April 27, 2018, the trial court granted Hydrojet's petition in part, declaring RAWA to be bound by the settlement agreement which was attached and incorporated into its order; noting that it considered the request for recusal to be withdrawn based upon the statement of counsel for RAWA that he had no further concerns following a discussion at the February 13, 2018 argument; directing Hydrojet to file an answer to RAWA's motion

---

[3] The settlement agreement provided Hydrojet with the ability to make installment payments over a period of eight years to satisfy the outstanding charges. (R.R. at 42a.)

4

for reconsideration; and scheduling additional argument relating to that motion on May 22, 2018. (R.R. at 54a-62a.)

Hydrojet filed its answer to RAWA's motion on May 21, 2018, and the trial court heard argument the next day. At this argument, counsel for RAWA stated that he had concerns regarding the trial court judge's lack of recusal, especially after she ruled that the settlement agreement was enforceable. As to that agreement, the trial court noted that the parties had reached an agreement at a meeting in December, subject to its memorialization in writing, and that the settlement agreement forwarded by counsel for RAWA to counsel for Hydrojet accurately depicted the agreed-upon terms. The trial court indicated that the verbal agreement reached by the parties in December was a sufficient basis upon which to rely in granting Hydrojet's petition for enforcement of the settlement agreement, which merely reflected the terms of the verbal agreement. Counsel for RAWA responded that he disagreed with the trial court's conclusion in this regard. Counsel also explained that RAWA had concerns regarding Hydrojet's finances that had arisen subsequent to the December meeting and that is why it rejected the executed settlement agreement provided to it on January 30, 2018. Counsel for Hydrojet noted that Rado stated at the February 13, 2018 argument that Hydrojet's financial situation was improving with new government contracts and that Hydrojet intended to comply with the repayment terms of the settlement agreement. (R.R. at 67a-83a.)

By decision and order dated May 23, 2018, the trial court denied RAWA's motion for reconsideration. With respect to the recusal issue, the trial court noted that the presiding judge's representation of the landlord in a lease transaction with Hydrojet occurred in 2009, that she drafted and negotiated a lease agreement on the landlord's behalf, and that the matter was not adversarial. The trial court

5

reiterated that counsel for RAWA expressed no further concerns following a discussion at the February 13, 2018 argument and that it considered the matter resolved. Further, the trial court noted that RAWA's disagreement with its ruling regarding enforcement of the settlement agreement was not a proper basis for granting recusal. (Trial court op., May 23, 2018, at 2-4.)

With respect to the settlement agreement, the trial court, relying on *Mastroni-Mucker v. Allstate Insurance Co.*, 976 A.2d 510 (Pa. Super. 2009), held that the verbal agreement reached by the parties in December 2017 constituted a binding agreement and any delay in executing a written agreement memorializing the agreed-upon terms does not defeat that agreement. The trial court also held that because RAWA's concerns regarding the financial position of Hydrojet did not arise until after the settlement had been reached, these concerns were not a proper basis to find the settlement agreement unenforceable. (Trial court op., May 23, 2018, at 3, 5.)

RAWA filed a notice of appeal with the trial court. Upon direction of the trial court, RAWA later filed a concise statement of errors complained of on appeal, alleging that the presiding judge should have recused herself from this matter and that the trial court erred in granting Hydrojet's petition for enforcement of a settlement agreement which had not been reduced to a signed writing. The trial court then issued an opinion in support of its previous orders, which merely restated the reasoning in its May 23, 2018 opinion. (Trial court op., July 10, 2018, at 1-6.)

6

On appeal,[4] RAWA argues that the trial court erred in granting Hydrojet's petition for enforcement of a settlement agreement when there was no written settlement agreement that contained the signature of anyone authorized to sign such an agreement on behalf of RAWA.[5]  We disagree.

Our Superior Court thoroughly discussed the applicable law relating to enforcement of settlement agreements in *Mastroni-Mucker*, the case relied on by the trial court herein.  In that case, the court explained as follows:

> The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. *Compu Forms Control Inc. v. Altus Group Inc*., 574 A.2d 618, 624 (Pa. Super. 1990).  There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. *Felix v. Giuseppe Kitchens & Baths, Inc*., 848 A.2d 943, 946 (Pa. Super. 2004).  If courts were called on to re-

---

[4] Our Superior Court has set forth the following standard of review of an appellate court when reviewing a trial court's decision to enforce a settlement agreement,

> [O]ur scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court.  However, we are only bound by the trial court's findings of fact which are supported by competent evidence.  The prevailing party is entitled to have the evidence viewed in the light most favorable to its position.  Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous.

*Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa. Super. 2002).

[5] RAWA also argued that the trial court judge erred in failing to recuse herself from this matter.  However, during oral argument, RAWA conceded there was no impropriety by the trial court judge herein and stated that it was no longer contesting the recusal issue.

evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. *Greentree Cinemas Inc. v. Hakim*, 432 A.2d 1039, 1041 (Pa. Super. 1981). Settlement agreements are enforced according to principles of contract law. *Pulcinello v. Consolidated Rail Corp.*, 784 A.2d 122, 124, (Pa. Super. 2001), *appeal denied*, 796 A.2d 984 (Pa. 2002). "There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 587 A.2d 1346, 1349 (Pa. 1990), *cert. denied*, 502 U.S. 867 (1991).

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. *McDonnell v. Ford Motor Co.*, 643 A.2d 1102, 1105 (Pa. Super.), *appeal denied*, 652 A.2d 1324 (Pa. 1994). This is true even if the terms of the agreement are not yet formalized in writing. *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999); *see Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 147 (Pa. Super. 2006) (stating "an agreement is binding if the parties come to a meeting of the minds on all essential terms, even if they expect the agreement to be reduced to writing but that formality does not take place."). Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing. *Pulcinello,* (citing *Kazanjian v. New England Petroleum Corp.*, 480 A.2d 1153, 1157 (Pa. Super. 1984)). An offeree's power to accept is terminated by (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party. *See First Home Savings Bank, FSB v. Nernberg*, 648 A.2d 9, 15 (Pa. Super. 1994) (citing Restatement (Second) of Contracts §36 ([Am. Law Inst.] 1981)), *appeal denied*, 657 A.2d 491 (Pa. 1995). However, "[o]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such." Restatement (Second) of Contracts §42, Comment c. ([Am. Law Inst.] 1981).

*Mastroni-Mucker*, 976 A.2d at 518.

As discussed above in *Mastroni-Mucker*, where a settlement agreement contains all of the requirements for a valid contract, a court must enforce the terms of the agreement even if they were never formalized in writing. *See also Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Board*, 739 A.2d 133, 136 (Pa. 1999) (holding that "[i]f the parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date"). Section 27 of the Restatement (Second) of Contracts includes similar language, stating that:

> Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations.

RESTATEMENT (SECOND) OF CONTRACTS §27 (Am. Law Inst. 1981).

In this case, RAWA does not dispute that the parties reached a verbal agreement with respect to Hydrojet's unpaid water and sewage bills at the meeting between the parties on December 5, 2017. This verbal agreement called for Hydrojet to make installment payments until these unpaid bills were fully satisfied. As can be seen in the subsequent written settlement agreement, the parties agreed that Hydrojet owed RAWA a total of $133,298.00 for past water service and that Hydrojet would make 98 monthly payments of $1,020.00 along with a lump sum payment of $33,329.50 to satisfy these outstanding charges, upon which RAWA would release Hydrojet from any claims relating to its past water usage. Hence, the necessary prerequisites for a valid contract were established at the December 5, 2017 meeting, *i.e.*, offer, acceptance, and consideration, and the trial court did not err in concluding

9

that the verbal agreement was a sufficient basis upon which to rely in granting Hydrojet's enforcement petition.

Even if we were to hold that the verbal agreement was not a sufficient basis upon which the trial court could rely in granting Hydrojet's enforcement petition, we note that the subsequently executed settlement agreement would be enforceable. While Hydrojet returned an executed settlement agreement to RAWA in late December 2017, which included a strikeout by Rado of a paragraph stating the agreement was executed voluntarily and without any duress or undue influence, we agree with Hydrojet that such language was mere legalese that had no bearing on the actual material and essential terms of the settlement agreement, *i.e.*, the total amount to be paid, the timeframe in which the payment would be made, and the amount of each installment payment.

In that regard, we disagree with RAWA that the executed settlement agreement sent by Hydrojet constituted a counteroffer, which would have terminated Hydrojet's power of acceptance. *See* RESTATEMENT (SECOND) OF CONTRACTS §36 (Am. Law. Inst. 1981) (noting the methods of termination of the power of acceptance, including rejection or counteroffer by the offeree, lapse of time, revocation by the offeror, or death or incapacity of the offeror or offeree). Section 39 of this Restatement defines a counteroffer as "an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer." RESTATEMENT (SECOND) OF CONTRACTS §39 (Am. Law Inst. 1981). The paragraph struck by Rado did not propose a "substituted bargain differing from that proposed by the original offer" as,

10

again, it did not relate to the material and essential terms of the settlement agreement.[6]

Moreover, RAWA does not dispute that after Hydrojet received a second shut-off notice on January 24, 2018, Hydrojet paid its January invoice and also made an installment payment by check consistent with the terms of the settlement agreement, which check was cashed by RAWA on January 29, 2018. The next day, January 30, 2018, Hydrojet forwarded to RAWA another executed settlement agreement, which included the previously struck paragraph. Furthermore, during argument, Hydrojet stated that it has continued to make monthly installment payments since January 2018 and that RAWA has accepted the same. Hence, RAWA appears to have conceded to the terms as set forth in the settlement agreement.

Accordingly, the order of the trial court granting in part Hydrojet's petition to enforce the settlement agreement is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] While RAWA contends that it rejected the purported counteroffer from Hydrojet, section 42 of the Restatement (Second) of Contracts, Comment C, explains that "[o]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such." RESTATEMENT (SECOND) OF CONTRACTS §42, Comment C (Am. Law Inst. 1981).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hydrojet Services, Inc.          :

                         :    No.  1272 C.D. 2018

         v.                 :

                         :

Reading Area Water Authority,      :

              Appellant       :

## ***ORDER***

AND NOW, this 14th day of November, 2019, the order of the Court of Common Pleas of Berks County, dated April 27, 2018, is hereby affirmed.

 

 

_____

PATRICIA A. McCULLOUGH, Judge